Christopher J. Kayser (OSB #984244)
ckayser@lvklaw.com
David G. Samuels (OSB #206308)
dsamuels@lvklaw.com
LARKINS VACURA KAYSER LLP
121 SW Morrison Street, Suite 700
Portland, Oregon 97204
Telephone: 503-222-4424

*Attorneys for [Proposed] Intervenor*
*Oregon Primary Care Association*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ABBVIE INC. (a Delaware corporation); ALLERGAN, INC. (a Delaware corporation); DURATA THERAPEUTICS, INC. (a Delaware corporation); ABBVIE PRODUCTS LLC (a Georgia limited liability company); PHARMACYCLICS LLC (a Delaware limited liability company); ALLERGAN SALES, LLC (a Delaware limited liability company),<br><br>                    *Plaintiffs*,<br><br>v.<br><br>DAN RAYFIELD, in his official capacity as ATTORNEY GENERAL OF THE STATE OF OREGON,<br><br>and<br><br>KATHLEEN CHINN, in her official capacity as BOARD PRESIDENT OF THE OREGON BOARD OF PHARMACY; RICHARD JOYCE, in his official capacity as BOARD VICE | Case No.: 6:25-cv-01332-IM<br><br>PROPOSED INTERVENOR OREGON PRIMARY CARE ASSOCIATION'S UNOPPOSED MOTION TO INTERVENE |

PROPOSED INTERVENOR OREGON PRIMARY CARE
ASSOCIATION'S UNOPPOSED MOTION TO INTERVENE

PRESIDENT OF THE OREGON
BOARD OF PHARMACY; and
SHANNON BEAMAN, JENNIFER
HALL, AMY KIRKBRIDE,
VICTORIA KROEGER, PRIYAL
PATEL, ANA PINEDO, and BRYAN
SMITH, in their official capacities as
BOARD MEMBERS OF THE
OREGON BOARD OF PHARMACY.

*Defendants*.

# TABLE OF CONTENTS

MOTION ................................................................................................................ 1

MEMORANDUM OF LAW ................................................................................ 1

BACKGROUND .................................................................................................. 2

    I.      Factual Background ................................................................................ 2

    II.     Legal Background .................................................................................. 4

        A.     Intervention ................................................................................ 4

            1.     Mandatory Intervention .................................................. 4

            2.     Permissive Intervention ................................................... 6

            3.     Timeliness ........................................................................ 6

        B.     The 340B Program and 340B Drug Distribution ........................ 7

        C.     Restrictive Manufacturer Policies .............................................. 9

        D.     Oregon H.B. 2385 ..................................................................... 11

ARGUMENT ....................................................................................................... 12

    I.      OPCA's Motion to Intervene is Timely ............................................. 13

    II.     OPCA Is Entitled to Intervene as of Right ......................................... 14

        B.     OPCA's Interests Will Be Impaired by the Disposition of the Litigation 18

        C.     OPCA's Interests Are Not Adequately Protected by the Parties ............. 20

    III.    OPCA Satisfies the Standards for Permissive Intervention Under FRCP 24(b)(2) ........................................................................................... 22

        A.     Intervention Will Not Cause Undue Delay or Prejudice ......................... 23

        B.     OPCA Brings a Claim or Defense That Shares a Common Question of Law or Fact ................................................................. 24

CONCLUSION ..................................................................................................... 27

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allied Concrete & Supply Co. v. Baker*,
 904 F.3d 1053 (9th Cir. 2018) ................................................................... 21

*Audubon Soc'y of Portland v. Jewell*,
 No. 1:17-cv-00069, 2017 WL 9471665 (D. Or. Mar. 27, 2017) .................................. 23, 24, 25

*Bresgal v. Brock*,
 637 F. Supp. 271 (D. Or. 1985) ................................................................. 15

*Californians For Safe & Competitive Dump Truck Transp. v. Mendonca*,
 152 F.3d 1184 (9th Cir. 1998) ................................................................. 21

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
 647 F.3d 893 (9th Cir. 2011) ................................................ 4, 5, 6, 18, 19, 20, 21, 22

*City of Emeryville v. Robinson*,
 621 F.3d 1251 (9th Cir. 2010) ................................................................. 15

*E. Bay Sanctuary Covenant v. Biden*,
 102 F.4th 996 (9th Cir.) ................................................................. 16, 17

*Forest Conservation Council v. U.S. Forest Serv.*,
 66 F.3d 1489 (9th Cir. 1995) ................................................................. 5, 21

*Genesis Health Care, Inc. v. Becerra*,
 701 F. Sup. 3d 312 (D.S.C. 2023) ................................................................. 8

*Idaho Farm Bureau Fed'n v. Babbitt*,
 58 F.3d 1392 (9th Cir. 1995) ................................................................. 15

*Idaho v. Freeman*,
 625 F.2d 886 (9th Cir. 1980) ................................................................. 15

*Kalbers v. U.S. Dep't of Justice*,
 22 F.4th 816 (9th Cir. 2021) ................................................................. 14

*Kootenai Tribe of Idaho v. Veneman*,
 313 F.3d 1094 (9th Cir. 2002) ................................................................. 25, 26

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
 591 U.S. 657 (2020) ................................................................. 20

*Lockyer v. United States*,
   450 F.3d 436 (9th Cir. 2006)...................................................................... 5, 16, 18, 21

*McConnell v. FEC*,
   540 U.S. 93 (2003) ........................................................................................... 20

*Novalpina Cap. Partners v. Read*,
   149 F.4th 1092 (9th Cir. 2025)........................................................................ 23, 26

*Novartis Pharms. Corp. v. Johnson*,
   102 F.4th 452 (D.C. Cir. 2024) ....................................................................... 10

*Nw. Env't Advocs. v. U.S. Env't Prot. Agency*,
   No. 3:12-cv-01751, 2014 WL 1094981 (D. Or. Mar. 19, 2014)........................ 6

*Or. Prescription Drug Monitoring Program v. United States Drug Enf't Admin.*,
   No. 3:12-cv-02023, 2013 WL 12325112 (D. Or. Mar. 31, 2013)...................... 6

*Perry v. Proposition 8 Official Proponents*,
   587 F.3d 947 (9th Cir. 2009)............................................................................ 24

*Sagebrush Rebellion, Inc. v. Watt*,
   713 F.2d 525 (9th Cir. 1983)............................................................................ 15

*Sanofi Aventis U.S. LLC v. HHS*,
   58 F.4th 696 (3d Cir. 2023).............................................................................. 10

*Smith v. Los Angeles Unified Sch. Dist.*,
   830 F.3d 843 (9th Cir. 2016)............................................................ 4, 6, 7, 13, 14, 15

*Smith v. Pangilinan*,
   651 F.2d 1320 (9th Cir. 1981).......................................................................... 20

*Spangler v. Pasadena City Bd. of Educ.*,
   552 F.2d 1326 (9th Cir. 1977).......................................................................... 23, 26

*Sw. Ctr. for Biological Diversity v. Berg*,
   268 F.3d 810 (9th Cir. 2001)........................................................ 4, 5, 6, 19, 20, 21

*United Airlines v. McDonald*,
   432 U.S. 385 (1977) ......................................................................................... 14

*United States v. Alisal Water Corp.*,
   370 F.3d 915 (9th Cir. 2004)................................................................ 7, 13, 16, 17, 18

*United States v. Brooks*,
   164 F.R.D. 501 (D. Or.) .................................................................................... 16

*United States v. State of Or.*,

745 F.2d 550 (9th Cir. 1984) ............................................................ 7, 13

*United States v. State of Or.*,
   839 F.2d 635 (9th Cir. 1988) .................................................... 5, 18, 20

*Washington v. FDA*,
   108 F.4th 1163 (9th Cir. 2024) .......................................................... 20

*WildEarth Guardians v. U.S. Forest Serv.*,
   573 F.3d 992 (10th Cir. 2009) ........................................................... 21

*Wilderness Soc. v. U.S. Forest Serv.*,
   630 F.3d 1173 (9th Cir. 2011) ............................................................. 6

**Statutes**

42 U.S.C. §§ 254b, 256b(a)(4)(A) ......................................................... 3

42 U.S.C. § 254b(b)(1)(A)(i)(V) ........................................................... 3

42 U.S.C. § 256b(a)(1) ........................................................................ 7

H.B. 2385 ........................ 1, 2, 4, 10, 11, 12, 13, 14, 15, 16, 17, 18, 20, 22, 23, 25, 27

H.B. 2385 § 1(2)(a) ........................................................................... 12

H.B. 2385 § 1(2)(b) ........................................................................... 12

H.B. 2385 § 2 .................................................................................. 12

**Rules**

Fed. R. Civ. P. 24 ..................................................................... 4, 6, 13

Fed. R. Civ. P. 24(a) ............................................................. 2, 4, 5, 23, 27

Fed. R. Civ. P. 24(a)(2) ........................................................... 1, 4, 5, 19

Fed. R. Civ. P. 24(a), (b)(1) .......................................................... 6, 13

Fed. R. Civ. P. 24(b) ..................................................... 2, 6, 23, 25, 26, 27

Fed. R. Civ. P. 24(b)(1)(B) ........................................................ 1, 23, 25, 26

Fed. R. Civ. P. 24(b)(1), (b)(1)(B) ...................................................... 6

Fed. R. Civ. P. 24(b)(3) .............................................................. 23, 24

LR 7-1 ................................................................................................................................. 1

LR 7-2(b) ........................................................................................................................... 1


**Federal Registers**

Notice Regarding Section 602 of the Veterans Health Care Act of 1992; Contract Pharmacy
    Services,61 Fed. Reg. 43,549 (Aug. 23, 1996) ........................................................... 9


**Other Authorities**

340B ESP Resources, 340B ESP, https://www.340besp.com/resources (last visited Nov. 12,
    2025).......................................................................................................................... 9

340B ESP Resources, 340B ESP, https://www.340besp.com/resources (last visited Nov. 20,
    2025).......................................................................................................................... 17

AbbVie, Contract Pharmacy Policy (Nov. 1, 2025),
    https://340besp.com/resources/abbvie/policy.pdf ......................................................
    ................................................................................................................... 9, 11, 18

Alkermes, 340B Contract Pharmacy Pricing (Oct. 29, 2025),
    https://340besp.com/resources/alkermes/policy.pdf .................................................. 11

AstraZeneca, 340B Contract Pharmacy Pricing (Aug. 17, 2020),
    https://www.340bhealth.org/files/AstraZeneca_Retail_Communication_-_340B_-
    _Final.pdf?_zs=Ccipc1&_zl=DaI27 ........................................................................... 9

Email from Bristol Myers Squibb to 340B Customers (Jan. 14, 2022),
    https://www.340bhealth.org/files/Bristol_Myers_Squibb_email_01-14-22.pdf...................... 17

H.R. Rep. No. 102-384, pt. 2, at 12 (1992)........................................................................ 7

Letter from Carole Johnson, Adm'r, HRSA, to Chris Compisi, Vice President, AbbVie, Inc.
    (Oct. 17, 2022), https://www.hrsa.gov/sites/default/files/hrsa/opa/programintegrity/hrsa-letter-
    abbvie-covered-entities.pdf........................................................................................ 10

Notice Regarding Bristol Myers Squibb 340B Practice, Bristol Myers Squibb (July 10, 2025),
    https://340besp.com/resources/bristol_myers_squibb/policy.pdf.............................................. 17

Or. Bd. of Pharmacy, 2025 Special August Board Meeting (Aug. 20, 2025),
    https://www.oregon.gov/pharmacy/Documents/August_20_2025_Special_Bd_Meeting_Summ
    ary.pdf ...................................................................................................................... 22

Sobi, Inc., 340B Contract Pharmacy Pricing (Nov. 1, 2025),
    https://340besp.com/resources/sobi/policy.pdf........................................................... 11

Sumitomo Pharma, 340B Contract Pharmacy Pricing (July 17, 2025),
    https://340besp.com/resources/sumitomo/policy.pdf.............................................................. 11

## CERTIFICATION

Pursuant to LR 7-1, counsel for proposed Intervenor Oregon Primary Care Association ("OPCA") certifies that they have conferred with counsel for the other parties to this action, and no party opposes this motion.

## MOTION

OPCA respectfully moves under Federal Rule of Civil Procedure ("FRCP") 24(a)(2) to intervene in this action as of right and alternatively under FRCP 24(b)(1)(B) for permissive intervention. In support of this motion, OPCA relies on the Declaration of Claire Tranchese ("Tranchese Decl.") filed herewith and the points and authorities discussed below.

## MEMORANDUM OF LAW

OPCA seeks to intervene in this action to defend H.B. 2385, which protects the delivery of discounted drugs purchased by OPCA members and other Oregon safety-net providers that participate in the federal 340B drug pricing program ("340B Program"). Specifically, H.B. 2385 protects the right of 340B Program participants, referred to in the 340B statute as "covered entities," to have their 340B-purchased drugs dispensed through outside pharmacies under contract without interference from drug manufacturers. Intervention by OPCA is necessary because no covered entity is currently a party to this case, the outcome of which will have a significant impact on the financial stability of OPCA's members and their ability to fulfill their missions of providing comprehensive primary care and needed medications to all Oregonians, regardless of ability to pay. Neither Plaintiffs ("AbbVie") nor Defendants oppose OPCA's intervention.

OPCA represents the interests of the law's intended beneficiaries. H.B. 2385 is intended to enable Oregon covered entities to direct shipment of 340B drugs to contract pharmacies. OPCA members participate in the 340B Program and rely on contract pharmacy arrangements so

that they can provide more services and treat more patients. OPCA also has an interest in this litigation because it participated in the drafting of H.B. 2385 and advocated extensively for its enactment.

OPCA is entitled to intervene under FRCP 24(a) because (1) its motion is timely; (2) it has a significant interest in the subject matter of this action; (3) its significant interest could be impaired by the disposition of the litigation; and (4) no party completely and adequately represents its interests. Alternatively, OPCA requests that the Court grant permissive intervention under FRCP 24(b) because OPCA has claims and defenses that share common questions of law and fact with the action, and its intervention will not cause undue delay or prejudice to the parties.

<div align="center">**BACKGROUND**</div>

## I.    Factual Background

OPCA is a non-profit association with thirty-three community health center members that provide comprehensive primary health care services to over 470,000 Oregonians across more than 270 service locations. Ex. 1, Tranchese Decl. ¶ 3. In a survey conducted by OPCA in September 2020, thirteen of OPCA's members responded and described how they invest every penny of 340B savings back into the communities they serve through programming such as housing, prescription assistance, dental care, behavioral health, case management, clinical pharmacy, and clinical site expansion. *Id.* ¶ 7. Without the 340B Program, it would be difficult for health centers to provide these community services because the services are either undercompensated or uncompensated by third party payers. *Id.*

Each OPCA member participates in the 340B Program. *Id.* ¶ 5. The members participate in the 340B Program as the result of being either a Federally Qualified Health Center ("FQHC") that receives federal funding under Section 330 of the Public Health Service Act or an FQHC

"look-alike" that is subject to Section 330 requirements but receives no grant funding. 42 U.S.C. §§ 254b, 256b(a)(4)(A); *id.* § 1396d(l). By virtue of their status as FQHCs or FQHC look-alikes, OPCA members are legally obligated to care for any patient regardless of the patient's ability to pay. Importantly, Section 330 contains several requirements, including a requirement that health centers provide "pharmaceutical services as may be appropriate . . . ." *Id.* § 254b(b)(1)(A)(i)(V). Thirteen of OPCA's members do not have their own in-house pharmacies. Tranchese Decl. ¶ 6. Instead, they rely on outside community-based retail pharmacies to order, receive, and dispense self-administered medications for their patients.

Drug manufacturers' contract pharmacy restrictions have caused direct and irreparable harm to OPCA's members. *Id.* ¶ 8. OPCA surveyed its members a second time (after the September 2020 survey) regarding financial loss due to the restrictions, and the fourteen members that responded reported a combined loss in 340B savings of $10.5 million in 2023. *Id.* ¶ 10. OPCA members have also been forced to change therapeutic options for patients and have less revenue to expand access to care due to the manufacturer restrictions. *Id.* ¶ 8. The manufacturer restrictions directly harm patients who formerly were able to obtain drugs at 340B discounted prices at multiple contract pharmacies. *Id.* ¶ 9. For covered entities that pass some or all of the savings from 340B on to patients, the loss of those savings means that patients must pay full price for their medications. *Id.* ¶ 9. And in some cases, covered entities have continued to provide discounts to patients, even though AbbVie has denied discounted pricing, placing significant financial strain on clinics and reducing access to affordable care. *Id.* ¶ 9.

OPCA sought relief from the contract pharmacy restrictions by working with the Oregon legislature to pass H.B. 2385. *Id.* ¶ 11. The organization directly participated in drafting H.B. 2385, working with lawmakers, legislative attorneys, and legislative staff to provide technical

expertise. *Id.* ¶ 11.  OPCA also took more than 120 "advocacy actions" including phone calls, letters, emails, and meetings with lawmakers. *Id.* ¶ 12.  OPCA staff members also engaged in targeted, individualized advocacy efforts by speaking directly with legislators to educate them on the need for H.B. 2385. *Id.* ¶ 13.

## II.    <u>Legal Background</u>

### A.    <u>Intervention</u>

#### 1.    <u>Mandatory Intervention</u>

Under FRCP 24(a), a party may intervene as a matter of right if it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).  FRCP 24(a) thus requires a proposed intervenor to satisfy a four-part test: (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit.  *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011); *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817–18 (9th Cir. 2001).

The Ninth Circuit has a broad policy "in favor of intervention" and has made clear that intervention motions under FRCP 24 are to be liberally construed.  *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016).  Doubts as to whether intervention is appropriate are to be resolved "in favor of intervention." *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1493 (9th Cir. 1995).  In addition, intervention "review is guided primarily

by practical considerations, not technical distinctions." *Citizens for Balanced Use*, 647 F.3d at 897 (quoting *Berg*, 268 F.3d at 118).

FRCP 24(a)(2) requires only that an intervenor "'claim[] an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest . . . .'" *Citizens for Balanced Use*, 647 F.3d at 897 (quoting Fed. R. Civ. P. 24(a)(2)). A person claiming an interest in the litigation need not wait until he or she has suffered irreparable harm to meet the requirements of FRCP 24(a). *Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) ("[A] party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation."); *Citizens for Balanced Use*, 647 F.3d at 900 ("[I]ntervention of right does not require an absolute certainty that a party's interests will be impaired."). If the effect of an adverse ruling would have a negative stare decisis effect on a proposed intervenor's interests, that impact would provide the requisite type of impairment to warrant intervention of right. *See Berg*, 268 F.3d at 822 (allowing intervention when an intervenor would be substantially affected in a practical sense by the determination made in an action) (quotation omitted); *United States v. State of Or.*, 839 F.2d 635, 638 (9th Cir. 1988) ("[A] stare decisis effect is an important consideration in determining the extent to which an applicant's interest may be impaired.").

A proposed intervenor typically has a minimal burden of showing that its interests are not adequately represented by the parties. *Citizens for Balanced Use*, 647 F.3d at 898 ("The burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate."); *id.* at 900 ("[I]ntervention of right does not require an absolute certainty that . . . existing parties will not adequately

represent its interests."). A proposed intervenor can rebut the general presumption that the government is adequately representing its interests by showing that its interests "may diverge" from, or conflict with, the government's interests. *Berg*, 268 F.3d at 823.

### 2. Permissive Intervention

Permissive intervention under FRCP 24(b) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1), (b)(1)(B). The Ninth Circuit has held that the discretionary authority to grant motions to intervene should be applied liberally. *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011); *see also Nw. Env't Advocs. v. U.S. Env't Prot. Agency*, No. 3:12-cv-01751, 2014 WL 1094981, at *2 (D. Or. Mar. 19, 2014) ("Regardless of what type of intervention is sought, the Ninth Circuit upholds a liberal policy in favor of intervention."); *Or. Prescription Drug Monitoring Program v. United States Drug Enf't Admin.*, No. 3:12-cv-02023, 2013 WL 12325112, at *2 (D. Or. Mar. 31, 2013) (same).

### 3. Timeliness

FRCP 24 requires that a motion to intervene be "timely," regardless of whether the movant seeks mandatory or permissive intervention. Fed. R. Civ. P. 24(a), (b)(1). Deciding the timeliness of intervention is not limited to chronological considerations but is "determined by the totality of the circumstances facing would-be intervenors . . . ." *Smith*, 830 F.3d at 854. There are no absolute measures of timeliness, and the "[m]ere lapse of time alone is not determinative." *United States v. State of Or.*, 745 F.2d 550, 552 (9th Cir. 1984). When considering timeliness, the Ninth Circuit applies the following factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Smith*, 830 F.3d at 854 (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915,

921 (9th Cir. 2004)).  The Ninth Circuit applies the timeliness test more leniently for intervention

as of right.  *See State of Or.*, 745 F.2d at 552.

      **B.**      **The 340B Program and 340B Drug Distribution**

      Established in 1992, the 340B Program is a voluntary drug pricing program that requires

participating drug companies to offer discounts on covered outpatient drugs to statutorily defined

safety-net providers, referred to as "covered entities," as a condition of the companies' drugs

being reimbursed by Medicaid and Medicare Part B.  42 U.S.C. § 256b(a)(1); *id.* § 1396r-8(a)(1).

The 340B Program is administered by the Health Resources and Services Administration

("HRSA"), which is a federal agency within the Department of Health and Human Services

("HHS").

      The 340B Program makes drugs more affordable for covered entities because those

entities provide significant levels of uncompensated care, and the discounts available through the

340B Program help relieve that burden.  H.R. Rep. No. 102-384, pt. 2, at 12 (1992).  Many

covered entities provide free or discounted drugs to their needy patients.  The 340B discounts

enable these covered entities to lose less money on drugs provided to their uninsured and

underinsured patients.  The savings the program provides allows covered entities to be more

generous with subsidizing patient care for needy patients, including reducing or waiving patient

copayments at the pharmacy counter.  The 340B Program also generates revenue for covered

entities so they are less dependent on taxpayer support.  If a covered entity patient has

prescription drug coverage, the difference between the insurer's payment and the discounted

340B purchase price is income to the covered entity to supplement federal funds, thus allowing

the covered entity "to stretch scarce federal resources as far as possible and enabling it to reach

more eligible patients and provide more comprehensive services."  *Id.* at 12.  In fact, the only

way for safety net providers to realize revenues on the purchase of 340B drugs is if the covered

entity submits claims to insurers for 340B drugs, which is exactly what the 340B Program

intends. *Genesis Health Care, Inc. v. Becerra*, 701 F. Sup. 3d 312, 316 (D.S.C. 2023) ("Put

simply, the purpose of the 340B Program was to provide a means to make 340B entities

profitable in order for those 340B entities to 'stretch scarce Federal resources as far as

possible.'") (quoting H.R. Rep. No. 102-384, pt. 2, at 12 (1992)).

     Most illnesses and injuries cannot be adequately treated or managed without the patient

taking one or more medications. That means that providers of health care—such as OPCA's

members—must ensure that their patients have access to a pharmacy to fill their prescriptions.

For this reason, some providers own and operate their own pharmacies, often referred to as "in-

house" pharmacies. However, because the construction and management of a pharmacy is

expensive and requires special expertise, many providers contract with independently owned

pharmacies to meet the pharmacy needs of their patients. In most cases, these contract

pharmacies are within the provider's service area, making them convenient and accessible to the

provider's patients. Typically, drugs dispensed by contract pharmacies are purchased under what

is referred to as a "bill to/ship to" arrangement—the drugs are billed to the covered entity and

shipped to the contract pharmacy. The provider purchases the drugs but does not take physical

possession of them. A wholesaler ships the drugs to the contract pharmacy, which then takes

physical custody of the drugs and dispenses them on the covered entity's behalf.

     It became abundantly clear after passage of the 340B statute in 1992 that, if covered

entities did not possess the right to acquire drugs through bill to/ship to arrangements, many of

them—specifically those lacking in-house pharmacies—would never have been able to

participate in the 340B Program, even though they clearly met the eligibility criteria established

by Congress.  HRSA thus informed covered entities that they could still participate by issuing guidance in 1996 that explicitly recognized covered entities' existing right under state law to use bill to/ship to arrangements for meeting the pharmacy needs of their patients.  Notice Regarding Section 602 of the Veterans Health Care Act of 1992; Contract Pharmacy Services, 61 Fed. Reg. 43,549, 43,552 (Aug. 23, 1996).

### C.    <u>Restrictive Manufacturer Policies</u>

For nearly three decades, every drug company participating in the 340B Program honored bill to/ship to arrangements and treated contract pharmacies the same as in-house pharmacies. That changed abruptly, however, in July 2020, when one manufacturer after another either fully eliminated or significantly restricted distribution of 340B drugs ordered through bill to/ship to arrangements.  *See, e.g.*, AbbVie, Contract Pharmacy Policy (Nov. 1, 2025), https://340besp.com/resources/abbvie/policy.pdf; AstraZeneca, 340B Contract Pharmacy Pricing (Aug. 17, 2020), https://www.340bhealth.org/files/AstraZeneca_Retail_Communication_-_340B_-_Final.pdf?_zs=Ccipc1&_zl=DaI27.  As of the date of this filing, at least thirty-six drug companies have unilaterally imposed restrictions on contract pharmacy arrangements.[1]  These restrictions have reduced the resources available to covered entities to meet the needs of their vulnerable patients, including the need for affordable and accessible prescription drugs.

---

[1] According to publicly available information, the following drug companies have restricted delivery of 340B drugs as of the date of filing this brief: AbbVie, Alkermes, Amgen Inc., Astellas Pharma Inc., AstraZeneca Pharmaceuticals LP, Bausch & Lomb Americas, Bayer, Biogen, Boehringer Ingelheim Pharmaceuticals, Inc., Bristol Myer Squibb, Eisai, Eli Lilly and Company, EMD Serono, Exelixis, Genentech, Gilead Sciences, Inc., GlaxoSmithKline, Incyte, Jazz Pharmaceuticals, Johnson & Johnson, Liquida, Merck and Company, Mitsubishi Tanabe Pharma America, Novartis Pharmaceuticals Corporation, Novo Nordisk, Inc., Organon & Co., Pfizer Inc., Sandoz, Sanofi-Aventis US LLC, Sobi, Sumitomo, Takeda Pharmaceuticals, Teva Pharmaceuticals, UCB, Vertex, and Viatris. *See 340B ESP Resources*, 340B ESP, https://www.340besp.com/resources (last visited Nov. 12, 2025).

PROPOSED INTERVENOR OREGON PRIMARY CARE                                    Page 9
ASSOCIATION'S UNOPPOSED MOTION TO INTERVENE

In response to these unprecedented policies, HHS wrote enforcement letters to manufacturers, including AbbVie, informing them that such restrictions on contract pharmacy arrangements violated the 340B statute. *See* Letter from Carole Johnson, Adm'r, HRSA, to Chris Compisi, Vice President, AbbVie, Inc. (Oct. 17, 2022), https://www.hrsa.gov/sites/default/files/hrsa/opa/programintegrity/hrsa-letter-abbvie-covered-entities.pdf.  Several manufacturers then sued HHS in several federal district courts to challenge HRSA's enforcement letters seeking, among other actions, an order that HHS's enforcement letter was invalid.  The results at the district court level varied, and the cases were appealed to the Third Circuit, D.C. Circuit, and Seventh Circuit.  While the Seventh Circuit has yet to issue a decision, the Third Circuit and D.C. Circuit both held that HHS lacked authority to invalidate the manufacturers' policies.  *Sanofi Aventis U.S. LLC v. HHS*, 58 F.4th 696, 706 (3d Cir. 2023); *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 461 (D.C. Cir. 2024).  These decisions apply strictly to HHS, which is not charged with administering Oregon's H.B. 2385, and apply only to the agency's authority under the 340B statute—not H.B. 2385.

Currently, AbbVie's contract pharmacy restrictions vary depending on how the covered entity qualifies for the 340B Program.  Hospital covered entities are restricted to one contract pharmacy location or one in-house pharmacy and, if the former, the contract pharmacy location must be within 40 miles of the hospital's main facility, and the hospital must submit limited claims data for that contract pharmacy.  For covered entity clinics that participate in the 340B Program based on receiving a federal grant or sub-grant, like OPCA members, AbbVie delivers 340B drugs to an unlimited number of contract pharmacies, but only if the 340B covered entity (1) registers and activates an account with 340B ESP™ and (2) submits claims data to 340B ESP™ for 340B drugs dispensed at each contract pharmacy.  AbbVie's policy also states that

AbbVie reserves the right to block "bill to/ship to 340B orders for AbbVie products dispensed through a contract pharmacy" if a federal grantee fails to submit claims data. AbbVie's policy includes an attachment in which AbbVie lists states for which its general policy does not apply or is adjusted, presumably to ensure compliance with the laws in those states. *See* AbbVie, Contract Pharmacy Policy (Nov. 1, 2025), https://340besp.com/resources/abbvie/policy.pdf. Oregon is not among the states listed.

Other drug manufacturers also maintain and enforce contract pharmacy restrictions. While policies differ, many apply to all covered entity types. Like AbbVie, some manufacturers condition the delivery of 340B-priced drugs to contract pharmacies on the covered entities' submission of claims data, and/or geographically restrict the covered entity's one designated contract pharmacy to a 40-mile radius of its parent site. A few drug manufacturers have explicitly exempted Oregon covered entities from their policies to comply with H.B. 2385. *See, e.g.*, Alkermes, 340B Contract Pharmacy Pricing (Oct. 29, 2025), https://340besp.com/resources/alkermes/policy.pdf; Sobi, Inc., 340B Contract Pharmacy Pricing (Nov. 1, 2025), https://340besp.com/resources/sobi/policy.pdf; Sumitomo Pharma, 340B Contract Pharmacy Pricing (July 17, 2025), https://340besp.com/resources/sumitomo/policy.pdf. As stated above, AbbVie's policy does not exempt Oregon covered entities. AbbVie, Contract Pharmacy Policy (Nov. 1, 2025), https://340besp.com/resources/abbvie/policy.pdf.

### D.    Oregon H.B. 2385

H.B. 2385 prohibits manufacturers from blocking or otherwise interfering with the 340B bill to/ship to arrangements between covered entities in Oregon and pharmacies they contract with. Consistent with the state's authority to regulate drug distribution within its borders, the statute protects 340B contract pharmacy arrangements under two provisions. First, H.B. 2385 §

1(2)(a) prohibits a drug manufacturer from denying, restricting, or prohibiting, or otherwise interfering with the delivery of a 340B drug to a contract pharmacy that is receiving the drugs on behalf of a covered entity located in Oregon.  Second, H.B. 2385 § 1(2)(b) prohibits a manufacturer from requiring a covered entity to submit a claim or utilization review data as a condition of the delivery of 340B drugs to a contract pharmacy that is receiving the drugs on behalf of a covered entity located in Oregon.  A violation of H.B. 2385 may result in the imposition of civil penalties by the Oregon Board of Pharmacy.  H.B. 2385 § 2.

On July 30, 2025, AbbVie filed suit in this Court, arguing that H.B. 2385 is preempted by the 340B statute and violates the Takings Clause of the U.S. Constitution.  Compl., ECF No. 1.  On August 18, 2025, AbbVie filed an amended complaint, adding a claim that H.B. 2385 is preempted by a pilot rebate program proposed (and since adopted) by HRSA.  Am. Compl., ECF No. 18.  The proceedings in this case are at their very stages.  Defendants filed an answer to AbbVie's amended complaint on November 17, 2025, just a few days ago.  Def's Ans., ECF No. 46.  The Court also adopted a scheduling order on October 22, 2025, under which summary judgment briefing will not begin until March 2026 and conclude in June 2026.  Sched. Ord., ECF No. 43.  Discovery, as OPCA understands it, is at its early stages.

## ARGUMENT

OPCA is entitled to mandatory intervention because it has moved for intervention in a timely manner, it has a significant, legally protectable interest in the outcome of this litigation, and its interest is not adequately represented by Defendants.  In the alternative, OPCA should be granted permissive intervention because intervention will not unduly delay or prejudice an existing party, OPCA's motion is timely, and OPCA's interests present common questions of law and fact with the current litigation.  OPCA notes that the District Court in the Western District of Louisiana allowed the Louisiana Primary Care Association to intervene in a lawsuit in

which AbbVie challenged a state law similar to H.B. 2385.  Mem. Ruling, *AbbVie v. Landry*, No. 6:23-cv-01307 (W.D. La. Mar. 7, 2024), ECF No. 58.

## I.    OPCA's Motion to Intervene is Timely

FRCP 24 requires that a motion to intervene, whether as of right or permissively, be "timely."  *See* Fed. R. Civ. P. 24(a), (b)(1).  The Ninth Circuit applies the same three-factor test for both types of intervention, looking at: (1) the stage of the proceeding at which the applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay.  *Smith*, 830 F.3d at 854; *Alisal Water Corp.*, 370 F.3d at 921.  Timeliness is "determined by the totality of the circumstances," *Smith*, 830 F.3d at 854, and is a "flexible concept" left to the district court's discretion.  *Alisal Water*, 370 F.3d at 921.  Mere lapse of time is not determinative; courts focus on whether intervention will disrupt the case or prejudice existing parties.  *Smith*, 830 F.3d at 854.  The Ninth Circuit applies these factors more leniently for intervention as of right, recognizing the stronger interests at stake.  *See State of Or.*, 745 F.2d at 552.  Regardless of how strictly these factors are applied, the result is the same: OPCA acted promptly in filing its motion.  Notably, neither Plaintiffs nor Defendants oppose OPCA's intervention.  The timeliness requirement is primarily intended to protect the interests of the existing parties, so the lack of objection to intervention should weigh heavily in favor of timeliness.

The timeliness of OPCA's motion is also self-evident under the Ninth Circuit's three factor test, as explained above.  *See Smith*, 830 F.3d at 854 (considering proceeding stage, party prejudice, and delay reason).  First, the litigation is at any early stage: this Court has only recently entered a scheduling order, and no motions on the merits have been filed.  As noted above, summary judgement briefing will not begin until March 2026 and will end in June under the Court's scheduling order.  These facts support a finding that this motion is timely because the

Ninth Circuit looks to whether the district court has "substantively—and substantially—engaged the issues," not simply the passage of time to determine whether a motion to intervene is timely. *Kalbers v. U.S. Dep't of Justice*, 22 F.4th 816, 826 (9th Cir. 2021) (internal quotations omitted). Here, the Court has not, making OPCA's motion timely.

Second, no party will be prejudiced if the motion to intervene is granted, as demonstrated by the lack of opposition to OPCA's motion. If either party believed that their interests would be prejudiced, they would have objected to intervention.

Third, OPCA has not delayed in seeking intervention. Timeliness is measured from when the intervenor should have known its interests were at risk, not from when it learned of the litigation. *United Airlines v. McDonald*, 432 U.S. 385, 394 (1977). As discussed in more detail below, that moment occurred here on August 22, 2025, when the Oregon Board of Pharmacy, in consultation with the Oregon Department of Justice, agreed to forbear enforcing H.B. 2385 after the law became effective—a decision that was not in the interest of OPCA's members. Recognizing that its own interest and its members' interests would not be adequately represented by Defendants—the Attorney General and members of the Board— OPCA moved quickly and filed this motion while the lawsuit is still in its early stages.

## II.    OPCA Is Entitled to Intervene as of Right

OPCA satisfies the Ninth Circuit's four-part test for intervention as of right, which is construed liberally. *Smith*, 830 F.3d at 853; *see also City of Emeryville v. Robinson*, 621 F.3d 1251, 1258 (9th Cir. 2010) ("Rule 24(a) traditionally receives a liberal construction in favor of applicants seeking intervention."); *Bresgal v. Brock*, 637 F. Supp. 271, 272 (D. Or. 1985) (same). OPCA has an interest in this litigation because its members rely on 340B contract pharmacies to receive and dispense needed medications for their patients, many of whom are medically vulnerable or underinsured. OPCA's interests will be impacted by the litigation because H.B.

2385 protects the right of OPCA's members to use contract pharmacy arrangements for ordering, receiving, and dispensing 340B drugs to their patients. In addition, Defendants do not adequately represent OPCA's interests, which differ from, and in some respects conflict with, the Defendants' interests.

### A. OPCA Has an Interest Relating to the Property or Transaction That Is the Subject of This Action

OPCA has an interest in this litigation because it participated in the drafting of H.B. 2385 and advocated for its enactment. Tranchese Decl. ¶ 11; *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 526 (9th Cir. 1983) (finding sufficient interest when intervenor "participated actively in the administrative process" of the action in question); *id.* at 527 (summarizing *Idaho v. Freeman*, 625 F.2d 886 (9th Cir. 1980) as allowing intervention in an action for "a cause which that organization had championed"); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1398 (9th Cir. 1995) (finding sufficient interest when intervenor was "active in the process" in which intervention was being considered). OPCA worked with lawmakers, legislative attorneys, and legislative staff to provide technical expertise. *Id.* ¶ 11. OPCA also took more than 120 "advocacy actions" including phone calls, letters, emails, and meetings with lawmakers. *Id.* ¶ 12. OPCA staff members also engaged in targeted, individualized advocacy efforts by speaking directly with legislators to educate them on the need for H.B. 2385. *Id.* ¶ 13. OPCA thus has a strong interest in defending H.B. 2385.

OPCA also has an interest in this litigation because its members are the intended beneficiaries of H.B. 2385. *Lockyer,* 450 F.3d at 441 (holding that intervenors had a "significant protectable interest" when they were the intended beneficiaries of the challenged law) (cleaned up). OPCA's members are all 340B covered entities, Tranchese Decl. ¶ 5, and H.B. 2385 expressly applies to covered entities. Oregon enacted H.B. 2385 specifically so that safety-net

health care providers that participate in the 340B program, such as OPCA's members, can direct shipment of discounted drugs to community pharmacies near their patients.  That is critical because OPCA's members rely heavily on contract pharmacies to provide 340B medications to their medically vulnerable and underinsured patients at reduced cost at locations accessible them. Tranchese Decl. ¶¶ 6, 9.

Finally, OPCA has a direct and substantial interest in the outcome of this litigation because H.B. 2385 protects the rights of OPCA's members to enter into contract pharmacy arrangements to order and receive 340B drugs without manufacturer interference.   In addition to reducing costs for patients, contract pharmacy arrangements also generate savings and revenue for OPCA's members so they can provide more services to more Oregonians at no cost to taxpayers.  *Id.* ¶¶ 7–10.  OPCA members therefore have an significant interest in defending H.B. 2385.  *See E. Bay Sanctuary Covenant v. Biden*, 102 F.4th 996, 1002 (9th Cir.), *cert. denied sub nom. Kansas v. Mayorkas*, 145 S. Ct. 415 (2024) (while an "economic interest may be sufficient to support a right of intervention," it "must be concrete and related to the underlying subject matter of the action."); *Alisal Water Corp.*, 370 F.3d at 919–20 (same); *United States v. Brooks*, 164 F.R.D. 501, 504 (D. Or.), *adhered to*, 163 F.R.D. 601 (1995) ("Given that the outcome of this case will have a direct economic impact on [proposed intervenor], the disposition of this action obviously will impair or impede its ability to protect that economic interest."); *see also* Mem. Ruling at 6, *AbbVie v. Landry*, No. 6:23-cv-01307 (W.D. La. Mar. 7, 2024), ECF No. 58 ("The Court finds LPCA's position that . . . it has an interest in the outcome of this litigation compelling" in lawsuit challenging a Louisiana law similar to H.B. 2385); Order at 6, *Pharm. Rsch. & Mfs. of Am. v. McClain*, 4:21-cv-00864 (E.D. Ark. May 3, 2022), ECF No. 22 ("Because [covered entity] Intervenors have demonstrated recognizable economic interests in the present

lawsuit [challenging an Arkansas law similar to H.B. 2385], their alleged interests . . . are

sufficiently direct, substantial, and legally protectable to allow them to intervene in the case.").

OPCA's interests are both "concrete" and "related to the underlying subject matter of the

action." *E. Bay Sanctuary Covenant*, 102 F.4th at 1002; *Alisal Water Corp.*, 370 F.3d at 919–20.

Until July 2020, every drug company participating in the 340B Program recognized a 340B

covered entity's right to dispense its 340B drugs through an unlimited number of contract

pharmacies. Now, at least thirty-six drug companies have implemented policies that restrict

distribution of 340B drugs to contract pharmacies. *See 340B ESP Resources*, 340B ESP,

https://www.340besp.com/resources (last visited Nov. 20, 2025). The manufacturer policies

differ, often including complicated exceptions or conditions, including the categories of covered

entities to which the policy applies.[2] Currently, AbbVie's policy distinguishes between grantees,

including FQHCs and other federally-funded clinics, and non-grantees, which are hospitals.

Hospitals are restricted to one contract pharmacy location. And AbbVie will only allow FQHCs

and other federal grantees and sub-grantees to use a contract pharmacy if they agree to submit

claims data for 340B drugs dispensed by their contract pharmacies. AbbVie, Contract Pharmacy

Policy (Nov. 1, 2025), https://340besp.com/resources/abbvie/policy.pdf. Thus, OPCA's

members and their patients face an imminent threat of significant harm that H.B. 2385 is

intended to prevent. While AbbVie exempts covered entities in several states with laws

---

[2] For example, prior to November 1, 2023, Bristol Myers Squibb imposed contract pharmacy
restrictions only on hospital covered entities but revised its policies effective July 10, 2025 to
apply to all covered entities, including FQHCs (also referred to as community health centers or
CHCs). *Compare* Email from Bristol Myers Squibb to 340B Customers (Jan. 14, 2022),
https://www.340bhealth.org/files/Bristol_Myers_Squibb_email_01-14-22.pdf *with* Notice
Regarding Bristol Myers Squibb 340B Practice, Bristol Myers Squibb (July 10, 2025),
https://340besp.com/resources/bristol_myers_squibb/policy.pdf.

comparable to H.B. 2385, it does not exempt Oregon covered entities.  *Id.*

AbbVie's challenge to this law, if successful, would allow drug companies to *continue* to prevent distribution of 340B drugs purchased by OPCA members and other Oregon covered entities for dispensing at contract pharmacies.  That possibility would perpetuate and probably expand the economic and clinical harm caused by AbbVie's policy.  *Citizens for Balanced Use*, 647 F.3d at 898 (finding "little difficulty concluding that the disposition of th[e] case may, as a practical matter, affect" intervenor's interest) (quoting *Lockyer,* 450 F.3d at 442)); *State of Or.*, 839 F.2d at 638 (concluding that the stare decisis effect "directly involve[ing] the conditions" at an institution were sufficient to impair intervenor's interests.).  OPCA's interest in protecting its members and their patients from that outcome is undeniable.

### B.    OPCA's Interests Will Be Impaired by the Disposition of the Litigation

AbbVie seeks an order to invalidate H.B. 2385 which, if granted, would subject OPCA's members to onerous claims-submission procedures and the perpetual threat of AbbVie—and other drugmakers—terminating delivery of 340B drugs to Oregon contract pharmacies entirely. Invalidating H.B. 2385 could therefore harm both the fiscal health of OPCA's members and their ability to meet the needs of vulnerable patients.  Without intervention, disposition of the current action will "as a practical matter impair or impede" OPCA's interests.  *Citizens for Balanced Use*, 647 F.3d at 897 (quoting Fed. R. Civ. P. 24(a)(2)); *Berg*, 268 F.3d at 817.

The prospect of manufacturers being able to restrict or eliminate contract pharmacy shipments ordered by OPCA's FQHC members is especially alarming.  Thirteen OPCA members do not operate in-house pharmacies and rely exclusively on outside retail pharmacies to order, receive, and dispense 340B drugs.  The requirements to obtain a pharmacy license are complex and operating an in-house pharmacy is expensive.  Even OPCA members that do operate in-house pharmacies rely on contract pharmacies to serve their patients because the contract

pharmacies are more conveniently located to where their patients live or work.  Tranchese

Decl. ¶ 6.  Without the ability to order, receive, and dispense self-administered drugs at 340B

discounts through contract pharmacies, OPCA members cannot meet the pharmacy needs of their

patients.  *Id.* ¶¶ 7–9.  If this lawsuit is decided in favor of AbbVie, OPCA members and other

340B covered entities in Oregon will be subject to unilateral manufacturer policies that prohibit

or severely restrict their ability to order and receive 340B drugs at contract pharmacies.  AbbVie

may, in effect, choose to eliminate the benefit of contract pharmacy arrangements, which

OPCA's members have relied upon for more than 25 years.  *See Citizens for Balanced Use*, 647

F.3d at 898 (proposed intervenor must show only that interest "may" be impaired or impeded by

litigation).

OPCA members use 340B savings and revenue from drugs shipped to contract

pharmacies to provide vital safety-net services to impoverished patients and communities.

Distribution of 340B drugs at contract pharmacies is, therefore, a vital component of Oregon's

public health care system.  The refusal of drug companies to distribute 340B-priced drugs to

contract pharmacies will result in lack of access to discounted drugs for financially needy

patients which, in turn, will likely require a change in their treatment regimen or cause them to

forgo prescribed medications.  Tranchese Decl. ¶ 8.  And with reduced savings from 340B drugs,

OPCA's members may be forced to reduce or eliminate the services that they provide to patients,

resulting in harm to the patients and the prospect of more expensive health care services.  In

short, invalidating H.B. 2385 would cause serious hardship to OPCA's members and their

vulnerable patients.  *State of Or.*, 839 F.2d at 638 (intervenor successfully showed that its

interests may be impaired by the operation of stare decisis effect as a result of the litigation);

*Smith v. Pangilinan*, 651 F.2d 1320, 1325 (9th Cir. 1981) (same); *see also* Mem. Ruling at 6,

*AbbVie v. Landry,* No. 6:23-cv-01307 (W.D. La. Mar. 7, 2024), ECF No. 58 ("The Court finds LPCA's position that . . . it has an interest in the outcome of this litigation compelling.").

### C.    OPCA's Interests Are Not Adequately Protected by the Parties

OPCA more than meets the "minimal" burden of showing that its interests are not adequately represented by the parties. *Berg*, 268 F.3d at 823; *Citizens for Balanced Use*, 647 F.3d at 898 (considering "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect."). AbbVie clearly does not represent OPCA's interests because it seeks to invalidate a law that was enacted to protect OPCA members.

Defendants' broad interests in protecting the constitutionality of H.B. 2385 and its ability to enforce that law differ from OPCA's narrower interests in contract pharmacy arrangements.[3] *Berg*, 268 F.3d at 823–24 ("On some issues [intervenors] will have to express their own unique private perspectives and in essence carry forward their own interests."); *Californians For Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998) ("[I]nterests of [intervenors] were potentially more narrow and parochial than the interests of the public at large."). OPCA can rebut the general presumption that the government is adequately representing its interests because there exists "distinctly different, and likely conflicting,

---

[3] An intervenor seeking the same relief as a defendant is not required to establish standing. *Washington v. FDA*, 108 F.4th 1163, 1172 (9th Cir. 2024) (explaining that "intervenors that seek the same relief sought by at least one existing party ... need not [establish independent Article III standing.]"); *see also McConnell v. FEC*, 540 U.S. 93, 233 (2003), *overruled on other grounds by Citizens United v. FEC*, 558 U.S. 310 (2010); *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020). Here, OPCA seeks the same relief as the Defendants—the Court's upholding of Oregon's H.B. 2385. OPCA nonetheless has standing because its members are injured by the conduct that Oregon H.B. 2385 is intended to remedy.

PROPOSED INTERVENOR OREGON PRIMARY CARE                    Page 20
ASSOCIATION'S UNOPPOSED MOTION TO INTERVENE

interests" in this case. *Lockyer*, 450 F.3d at 444; *Citizens for Balanced Use*, 647 F.3d at 899 (finding the presumption rebutted even when "both entities occupy the same posture in the litigation.") (citing *WildEarth Guardians v. U.S. Forest Serv.,* 573 F.3d 992, 996 (10th Cir. 2009)).

OPCA's members rely on 340B contract pharmacy arrangements to supplement their federal funding and to enable their patients to access 340B drugs at convenient locations. Defendants' interests in defending the law are not the same type of practical interests that prompts OPCA to request intervention. Defendants have a "broad public interest" to protect the public at large, whereas OPCA seeks to advance the "narrow, parochial interests of" its own members. *Forest Conservation Council*, 66 F.3d at 1499; *Mendonca*, 152 F.3d at 1190; *Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053, 1067–68 (9th Cir. 2018). OPCA and its members share a mission of supporting public health in Oregon, but their first priority is keeping the health centers' doors open and the lights on. In that regard, they need H.B. 2385 to be implemented and enforced as soon as possible.

Defendants' lack of urgency in enforcing H.B. 2385 is clearly an area in which Defendants' and OPCA's interests diverge. Three months ago, the Oregon Board of Pharmacy voted to "forbear enforcement of H.B. 2385 until the Court issues final judgment" in two separate drug manufacturer cases and waived the right to seek penalties later for conduct during this period. Or. Bd. of Pharmacy, 2025 Special August Board Meeting (Aug. 20, 2025), https://www.oregon.gov/pharmacy/Documents/August_20_2025_Special_Bd_Meeting_Summar y.pdf (adding that the "Board will not take any enforcement action or otherwise assess liability under H.B. 2385 for any conduct that occurred during the Period of Forbearance as made and unanimously carried."). Resolution of the pending court cases could take years, especially if

appeals are filed, which is likely. In the meantime, manufacturers may impose their restrictions with impunity. Every day that passes without enforcement of H.B. 2385, covered entities receive less savings and revenue to meet the primary healthcare needs of their patients.

The Board of Pharmacy's decision to delay enforcement of H.B. 2385 was unquestionably against the interest of OPCA's members. It demonstrates how Defendants have already prioritized their interests over that of OPCA. Defendants' delay and active forbearance of H.B. 2385's enforcement illustrates how OPCA cannot rely on the Defendants to represent its interests in this case. Having shown that their interests diverge from the interests of OPCA and its members, it cannot be said that Defendants "will undoubtedly make all of a proposed intervenor's arguments" or that they are "capable and willing to make such arguments." *Citizens for Balanced Use,* 647 F.3d at 898.

The 340B Program is a lifeline to OPCA members' survival and the health of their patients. *See, e.g.*, Tranchese Decl. ¶¶ 5–10. The contract pharmacy restrictions unilaterally imposed by AbbVie and other manufacturers threaten that lifeline. The Oregon legislature responded to OPCA's pleas for help by enacting H.B. 2385, but Defendants do not have the same burning interest to protect the 340B Program as OPCA. Defendants' interests are not, therefore, wholly aligned with OPCA's interests.

## III.    OPCA Satisfies the Standards for Permissive Intervention Under FRCP 24(b)(2)

In addition to meeting the requirements for intervention as a matter of right under FRCP 24(a), OPCA meets the requirements for permissive intervention under FRCP 24(b). OPCA "shares with the main action a common question of law or fact" regarding the legality of H.B. 2385. Fed. R. Civ. P. 24(b)(1)(B). OPCA has a claim or defense that is timely and will not unduly prejudice or delay the adjudication of the parties' rights. *Cf.* Mem. Ruling, *AbbVie v.*

*Landry*, No. 6:23-cv-01307 (W.D. La. Mar. 7, 2024), ECF No. 58 (intervention granted to Louisiana Primary Care Association).  Likewise, other discretionary factors weigh in favor of intervention.  *Novalpina Cap. Partners v. Read*, 149 F.4th 1092, 1100–01 (9th Cir. 2025); *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

### A.  Intervention Will Not Cause Undue Delay or Prejudice

Permitting OPCA to intervene will not result in undue delay or prejudice to the existing parties.  *See* Fed. R. Civ. P. 24(b)(3).  In *Audubon Soc'y of Portland v. Jewell*, No. 1:17-cv-00069, 2017 WL 9471665, at *5 (D. Or. Mar. 27, 2017), this Court found "no risk of delay or prejudice" where the intervenors filed their answer concurrently with the motion and before the court had substantively engaged the issues.  Although the Defendants have recently filed an answer, OPCA is seeking intervention before AbbVie's deadline to file a dispositive motion and before the Court has addressed the merits of any parties' pleadings; is filing an answer concurrently with its motion to intervene; and is prepared to proceed under the existing scheduling order without any modification.  As in *Jewell*, OPCA's participation will not burden the Court or existing parties and will facilitate efficient resolution of the case.

In contrast, the Ninth Circuit has affirmed denials of permissive intervention where a proposed intervenor's participation would "consume additional time and resources" and likely delay the case.  *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955–56 (9th Cir. 2009).  The circumstances here are fundamentally different.  All parties have consented to OPCA's participation, eliminating any contention that intervention would be prejudicial.  OPCA is fully prepared to proceed under the Court's scheduling order, ECF No. 43, and seeks no modification of the deadlines already set by the Court.  Unlike the intervenor in *Perry*, OPCA does not seek to expand the litigation or raise issues beyond those already presented.  Its participation will

therefore not burden the Court or the existing parties, or delay adjudication of the merits.

In addition, OPCA represents members directly affected by AbbVie's restrictive contract pharmacy policies, the very practices challenged in this suit. OPCA's ability to supply real-world context and factual information will facilitate, not impede, the efficient resolution of the case. Providing the Court with a more complete understanding of the real-world impact of the challenged policies will streamline the presentation of evidence and clarify the issues in dispute. Because OPCA's involvement will neither delay the proceedings nor prejudice the existing parties, FRCP 24(b)(3) is satisfied.

**B.      OPCA Brings a Claim or Defense That Shares a Common Question of Law or Fact**

OPCA's defenses plainly share common questions of law and fact with the claims and defenses raised in this litigation, satisfying the requirements of FRCP 24(b)(1)(B). The Ninth Circuit interprets the commonality requirement in FRCP 24(b)(1)(B) under the rule's "plain meaning" and emphasizes that the threshold is minimal: a common question exists whenever the intervenor's defense raises any question of law or fact also present in the main action. *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110–11 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011). In *Kootenai Tribe*, the Ninth Circuit upheld permissive intervention because the intervenors' defenses were "directly responsive" to the plaintiffs' challenge to the legality of a government action. *Id.* at 1110. The Ninth Circuit further clarified that a proposed intervenor need not satisfy FRCP 24(a)'s "protectable interest" requirement to qualify for permissive intervention. *Id.* at 1110–11.[4]

This Court has applied those principles directly. In *Audubon Society of Portland v.*

_____

[4] Although FRCP 24(b) does not require a showing of a "protectable interest," OPCA nonetheless has a protectable interest, as explained in Section II.

*Jewell*, this Court granted permissive intervention because the intervenors' defenses and the plaintiffs' claims both raised the same question—the legality of the challenged action.  2017 WL 9471665, at *5.  This Court concluded that the shared legal question was sufficient to support permissive intervention under FRCP 24(b).

The same principle applies here.  Plaintiffs challenge the legality and constitutionality of H.B. 2385.  OPCA seeks to assert defenses that address precisely the same operative facts and the same core legal question—whether H.B. 2385 is lawful.  As in *Kootenai Tribe* and *Jewell*, OPCA's defenses are directly responsive to the claims asserted and introduce no collateral issues. Because OPCA's defenses share common questions of law and fact with the main action, the requirement of FRCP 24(b)(1)(B) is satisfied.

### C.  Other Discretionary Factors Support Permissive Intervention

Beyond the stated requirements of FRCP 24(b), courts may consider additional factors relevant to fairness and judicial efficiency of a proposed intervention.  The Ninth Circuit has recognized that, in exercising this discretion, a court may evaluate several additional factors including the nature and extent of the intervenor's interest, the adequacy of representation by existing parties, the extent to which intervention would contribute to the development of the underlying factual record, and whether the intervenor's participation would promote the just and equitable adjudication of the legal issues presented.  *Novalpina*, 149 F.4th at 1100–01; *Spangler*, 552 F.2d at 1329.

These discretionary factors strongly support intervention by OPCA.  OPCA represents covered entities directly impacted by AbbVie's contract pharmacy restrictions, and their interests are not fully represented by the existing parties.  OPCA is uniquely situated to provide critical facts and perspectives concerning the practical consequences of AbbVie's policies.  That

contribution will assist the Court in developing a complete factual record, consistent with the Ninth Circuit's recognition in *Spangler* that intervention may be appropriate where it enhances the development of factual issues central to the case.  552 F.2d at 1329.

The Ninth Circuit has emphasized that permissive intervention is warranted where the intervenor's participation will provide insight beyond what existing parties can offer and aid the Court in its orderly consideration of significant legal questions.  *Novalpina*, 149 F.4th at 1100–01 (noting that the intervenor was "in a better position . . . to shed additional light" on the factors applied in that case); *Kootenai*, 313 F.3d at 1111 (recognizing permissive intervention is warranted where the intervenor's participation will aid the court in its orderly consideration of significant legal questions affecting broader interests).  Likewise, OPCA is better positioned than the existing parties to shed additional light on the real-world impact of AbbVie's contract pharmacy restrictions and the importance of H.B. 2385 for covered entities.  Because OPCA's interests are substantial, its contributions will materially assist the Court, and its participation will promote the efficient and equitable resolution of this litigation, the discretionary factors under FRCP 24(b) weigh strongly in favor of granting permissive intervention.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

PROPOSED INTERVENOR OREGON PRIMARY CARE
ASSOCIATION'S UNOPPOSED MOTION TO INTERVENE

## <u>CONCLUSION</u>

For the foregoing reasons, OPCA respectfully requests that the Court grant its

unopposed motion to intervene as of right under FRCP 24(a) or, in the alternative, to allow it

to intervene under FRCP 24(b).

<div style="margin-left: 40%;">

Respectfully submitted,

LARKIN VACURA KAYSER LLP

*/s/David G. Samuels*
Christopher J. Kayser (OSB #984244)
ckayser@lvklaw.com
David G. Samuels (OSB #206308)
dsamuels@lvklaw.com
LARKINS VACURA KAYSER LLP
121 SW Morrison Street, Suite 700
Portland, Oregon 97204
Telephone: 503-222-4424

*Attorneys for [Proposed] Intervenor
Oregon Primary Care Association*

</div>

Dated:  November 21, 2025

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 8,359 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

<u>/s/David G. Samuels</u>

David G. Samuels